IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


CAROL CLOVER,

    Plaintiff,

vs.                              CASE NO. 1:06cv225-MP/WCS

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

    Defendant.

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Carol Clover, applied for disability insurance benefits. Her insured status expired on September 30, 2003, and accordingly she must prove disability commencing on or before that date. R. 194. Plaintiff was 57 years old at the time of the administrative hearing, had an 8th grade education, and had past relevant work as a

cashier and a retail clerk. Plaintiff alleges disability commencing on December 15, 1999, due to osteoarthritis of her right hip and left shoulder, leg pain, and depression. R. 15. The Administrative Law Judge found that Plaintiff has the residual functional capacity to stand, walk, and sit six hours in an eight hour workday, and lift 20 pounds, but with postural limitations for crouching and crawling. R. 19. He found that she could do her past relevant work and was not disabled as defined by Social Security law.

Plaintiff contends that this finding is not supported by substantial evidence in the record. Plaintiff focuses in her memorandum upon her experience of pain, and makes no argument concerning evidence of depression.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairments?

    3.     Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

    4.     Does the individual have any impairments which prevent past relevant work?

    5.     Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the Administrative Hearing** [1]

    Plaintiff testified that although she kept her driver's license up to date, she did not feel comfortable driving because she could not see well enough on one side. R. 198. She thought that this might be related to glaucoma. *Id*. Glaucoma had been diagnosed in May, 2002. R. 1999.

---

[1] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, as available to the court on Westlaw. Only the PDR 2005 and earlier versions of the PDR are available to the court. Medical terms come from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at: http://www.mercksource.com (Medical Dictionary link).

Plaintiff said her back pain started getting really bad in 1999, when she worked for Dollar General. R. 202. She did a lot of lifting in that job. R. 203.

She said that at the time of the hearing, her right hip hurt the most. R. 202. She said the ache went down her leg. R. 203. She said that due to pain, she could not sleep at night, and that due to pain, she could not grasp or hold objects. *Id.* These problems started in 1998 or 1999. *Id.* She said that the neck pain gave her terrible headaches. R. 204, 216. In March, 1999, her doctor told her that she was limited to lifting 5 pounds. R. 204. She said she could not lift a gallon of water (8 pounds) now. R. 205. She could lift less than a gallon, however. R. 217. She said that in 1999, she used to pick up two cases of bottled Coca Cola (48 bottles), but could not pick up six bottles now. R. 206. She also suffered carpal tunnel syndrome in one hand in 1999. R. 206-207. She had surgery, which she said helped quite a bit. R. 207.

Plaintiff testified that she has asthma. R. 208. She takes Albuterol[2] for asthma. *Id.* She also takes Advair.[3] R. 218. She said that she was taking Tramadol[4] for pain. R. 218. She was also taking Effexor,[5] to replace Zoloft. *Id.*

Plaintiff said that she cannot sit for more than one half hour. R. 209. After that period, she said that she experiences pain in her hips, back, and head. *Id.* She said that "sitting alone, it just puts pain almost everywhere on me." R. 210. She thought that

---

[2] Albuterol is a bronchodilator. PHYSICIANS' DESK REFERENCE (2005).

[3] Advair Diskus is used to treat asthma. PHYSICIANS' DESK REFERENCE (2005).

[4] Tramadol hydrochloride is marketed as Ultram, a centrally acting synthetic opioid analgesic. PHYSICIANS' DESK REFERENCE (2005).

[5] Effexor is prescribed for depression. PHYSICIANS' DESK REFERENCE (2004), p. 3413.

she could stand for "10, 15 minutes maybe if I'm lucky. If I feel good that day I can do it that long at a time maybe." *Id.* After ten or fifteen minutes, her legs become weak, shake, and ache, she said. *Id.* She said that she had experienced pain in her legs and hips before 1999. *Id.*

Plaintiff said that at night she was lucky to sleep two hours at a time. R. 215. She said that muscle spasms and pain would wake her. *Id.*

**Legal Analysis**

Plaintiff contends that the determination of the Administrative Law Judge that she has the residual functional capacity to do her former work as a cashier and a clerk is not supported by substantial evidence in the record. Doc. 12, p. 14. Plaintiff cites the following portions of the record as relevant to this contention: R. 95, 110-112, and 118. Doc. 12, pp. 15-17. Plaintiff also cites her own description of her impairments: R. 43-45. Doc. 12, p. 18.

The first issue raised is whether the Administrative Law Judge gave proper weight to the evidence from Dr. Redmon, a treating physician. The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence. Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

Estrellita H. Redmon, M.D., wrote a "to whom it may concern" note for Plaintiff on March 2, 1999. R. 111. She said:

> Mrs. Carol Clover has a diagnosis of cervical degenerative joint disease and cervical and thoracic strain. It is recommended because of her pain and symptoms that she limit her lifting to less than 5 pounds. Hopefully, this will allow her medical treatment to be more successful.

R. 111. Concerning this note, the Administrative Law Judge wrote:

> Dr. Redmon's recommendation on March 2, 1999, limiting the claimant to lifting less than 5 pounds was followed by a statement indicating that this was to be a temporary situation to allow her medical treatment to be more successful. Significantly, most of the x-rays were normal. Ex-rays of the cervical and lumbosacral spine showed minimal degenerative changes with well preserved intervertebral joint spaces and no evidence of a herniated disc. Subsequent progress notes do not indicate that the claimant had continued to have pain and symptoms as previously alleged or that she was being treated for the same impairments. In addition, claimant received conservative treatment and none of her treating sources recommended surgery. The undesigned accords little weight to this opinion which was written prior to the onset date and is not supported by the objective medical evidence and the claimant's activities of living (Social Security Rule 96-6p).

R. 17.

The ALJ's reasoning is supported by substantial evidence in the record. Dr. Redmon's note of March 2, 1999, only limited Plaintiff to lifting weights less than 5 pounds. There was no other limitation, and the limitation was temporary, to allow medical treatment to be more successful. Moreover, about two weeks later, on March 15, 1999, Dr. Redmon released Plaintiff to return to her work at Dollar General. R. 110. The only restriction noted was minimal walking, to stay off her feet ("off foot") as much as possible. *Id.*

Other clinical evidence showed only mild findings of impairment. Plaintiff was examined by Mark E. Fahey, M.D., on January 16, 1999. R. 112. Plaintiff cites this medical note as evidence of disability, doc. 12, p. 15, but instead the note supports the findings of the Administrative Law Judge. Plaintiff came to Dr. Fahey with a "several

month history of parascapular left shoulder pain." *Id*. Plaintiff said that it was worse when she had to do "a lot of overhead lifting at work." *Id*. Plaintiff said that she occasionally had some paresthesias in both hands, and she had been wearing a night splint on the left wrist and taking Naprosyn,[6] but had not done any exercises. *Id*. Upon examination, Dr. Fahey essentially found little impairment to Plaintiff's shoulder. He said:

> EXAMINATION today reveals full range of motion of her neck and shoulder. Shoulder motion is not painful. The extremes in neck motion are uncomfortable. She has no exquisite trigger point. She does have some at the medial border of her scapula. She has no impingement sign, has excellent strength in her rotator cuff. She has a normal neurovascular exam. She has some irritation of her carpal tunnel.

*Id*. Dr. Fahey found mild diffuse spinal spondylosis[7] by x-ray, but the x-ray of her shoulder was normal. *Id*. Dr. Fahey's conclusion was some myofascial type pains about the shoulder, with some neck arthritis. *Id*. He recommended conservative treatment consisting of Naprosyn, a heating pad, massage, stretching, and strengthening exercises. *Id*.

X-rays in the record likewise revealed only mild impairments of the spine and joints. An x-ray of Plaintiff's thoracic spine taken on February 16, 1999, was normal. R. 98. An x-ray of her right foot on February 22, 1999, was normal. R. 99. An x-ray of Plaintiff's cervical spine showed only mild changes (degenerative narrowing at C3-4,

---

[6] Naprosyn is a nonsteroidal anti-inflammatory drug. PHYSICIANS' DESK REFERENCE (2004), p. 2902.

[7] Spondylosis is the ankylosis of a vertebral joint or degenerative spinal changes due to osteoarthritis. Ankylosis is the immobility and consolidation of a joint due to disease, injury, or surgical procedure. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

C5-6, and C6-7, mild retrolisthesis of the vertebral body of C3 on that of C4, and minimal posterior osteophyte formation at C5-6). R. 100. The views of Plaintiff's left shoulder were normal. *Id.* The x-ray of Plaintiff's right hip was normal. R. 97. Views of Plaintiff's lumbosacral spine revealed only mild changes. *Id.* There were mild hypertrophic degenerative changes in the L4-5 and L5-S1 apophyseal joints on the right and the L3-4 and L5-S1 apophyseal joint on the left. *Id.* A broad Schmorl's node[8] was seen involving the superior end plate of L2. *Id.* The spine as viewed was otherwise unremarkable. *Id.* An electromyelographic examination on June 1, 1999, was normal, with no evidence of radiculopathy. R. 96. An x-ray of Plaintiff's hands showed only moderate narrowing of every interphalangeal joint, and with normal MCP joints. R. 95. The impression was moderate degenerative arthropathy involving all finger joints. *Id.*

   Plaintiff refers to another medical note concerning foot pain, but again, that note does not provide evidence of an impairment that might continue for twelve months or more. Doc. 12, p. 17. On May 28, 1999, Plaintiff was examined by Russell W. Rowan, D.P.M. R. 118. She complained of continued pain in her right heel. *Id.* She had had two injections without relief of symptoms and had tried Naprosyn. *Id.* She had purchased a pair of tennis shoes that had helped "somewhat." *Id.* An examination revealed that she had tenderness in her posterior heel as well as the plantar rim, with pain in the medial tubercle. *Id.* The diagnosis was chronic plantar fasciitis. *Id.* She was to stay off her foot for the weekend and a note was to be given for work. *Id.* She

---

   [8] A Schmorl's node is a nodule or little knot seen in radiographs of the spine, due to prolapse of nucleus pulposus into an adjoining vertebra. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

was given a prescription for Lodine[9] and an arch support was recommended.  *Id*.

Ultrasound and massage were recommended and she was to follow-up as needed.  *Id*.

While this condition was then painful, there is no evidence that it continued for twelve

months or more.

On January 22, 2004, nearly five years later and a few months after Plaintiff's

insured status expired, Kurt Zimmer, D.O., examined Plaintiff on a consultative basis.

R. 134-136.  Plaintiff told Dr. Zimmer that her legs had hurt her for some time.  R. 134.

While she said that she had been diagnosed with glaucoma, she did not then notice any

visual deficit.  *Id*.  Dr. Zimmer found that Plaintiff had some minimal restriction in range

of motion of her hips and knees.  R. 135.  Deep tendon reflexes, strength, sensation,

and peripheral pulses in the upper and lower extremities were intact, that is, they were

normal.  *Id*. and R. 133.  Straight leg raising was negative for pain.  R. 135.  Plaintiff's

gait was minimally antalgic, and her heel and toe walk were unimpaired.  *Id*.

Plaintiff complained of intermittent numbness, tingling, pain and grip

abnormalities of both hands, mostly on the left.  R. 133.  Plaintiff, however, was

negative for Phalen's[10] and Tinel's signs,[11] tests for carpal tunnel syndrome.  R. 135.

---

[9] Lodine is the brand name for etodolac, a nonsteroidal anti-inflammatory medication. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[10] "Phalen's maneuver is described as follows:  the size of the carpal tunnel is reduced by holding the affected hand with the wrist fully flexed or extended for 30 to 60 seconds, or by placing a sphygmomanometer cuff on the involved arm and inflating to a point between diastolic and systolic pressure for 30 to 60 seconds." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[11] Tinel's sign is:  "A tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve.  It indicates a partial lesion or the beginning regeneration of the nerve." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

Plaintiff also had full grip strength bilaterally, and her fine finger movement seemed to be adequate. *Id.* Dr. Zimmer concluded:

> The patient's ability to perform work related functions, such as standing, walking and lifting are probably impaired by the patient's chronic leg pain secondary to osteoarthritis. Sitting for periods greater than 1 hour at a time may be uncomfortable for the patient. Carrying, handling objects and lifting may be impaired by the patient's carpal tunnel syndrome, although the symptoms are intermittent. . . .

R. 136.

The Administrative Law Judge discounted Dr. Zimmer's conclusions as to Plaintiff's ability to do work related activities. R. 18. He reasoned that the objective findings by Dr. Zimmer did not support his conclusions:

> His conclusions are inconsistent with his examination and are not supported by objective medical findings or treating progress notes of record during the period at issue. Specifically, Dr. Zimmer found that the claimant had some apparent restricted range of motion in her hips and knees, although it was minimal. There were no sensory or reflex abnormalities in the upper or lower extremities. Straight leg raising was negative. Deep tendon reflexes, strength and sensation as well as peripheral pulses in the upper and lower extremities were intact. Range of motion tests were with the normal limits. Although the claimant complained of intermittent numbness, tingling, pain and grip abnormalities of both hands, mostly the left, she was able to get on and off the examination table with minimal difficulties. The claimant had 5+/5 grip strength bilaterally, fine finger movement was adequate and Phalen and Tinel tests were negative. Her ability to heel and toe walk was unimpaired. Further, the undersigned affords little weight to this physician's report and conclusions because he was not a treating physician. Dr. Zimmer examined the claimant on only one occasion (January 2004) and his conclusions appear to be based on the claimant's subjective complaints and not objective medical findings.

R. 18. These reasons for discounting the conclusions of Dr. Zimmer are supported by substantial evidence in the record discussed above. Further, a consultative examination, that is, a one-time examination by a physician who is not a treating

physician, need not be given deference by the Commissioner. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

Plaintiff does not cite to any other evidence in the record other than Plaintiff's own subjective description of her impairments. Doc. 12, p. 18, citing R. 43-45. This evidence is consistent with Plaintiff's testimony, but the issue is whether it was credible and that depends in significant part upon the objective medical evidence.

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity. Social Security Ruling 96-8p, p. 4. Pain and other symptoms may affect either exertional or non-exertional capacity, or both. *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

The Administrative Law Judge determined that Plaintiff's subjective complaints and symptoms were beyond what could be expected from the objective laboratory and

clinical findings, especially the evidence prior to September 30, 2003, the last date of Plaintiff's insured status. R. 18. He fully discussed those objective findings in other parts of his opinion, and those findings have been discussed above. The ALJ's credibility finding is supported by this substantial evidence in the record.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and are based upon substantial evidence in the record. Accordingly, the decision of the Commissioner should be affirmed.

Therefore, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 3, 2007.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**